Ms. Friedman Good morning, Your Honors. May it please the Court. We come before you with three arguments this morning. First, that the ALJ is not qualified to decide whether an IQ test is valid. And second, without the ALJ's uneducated, uninformed opinion, there is no substantial evidence that the IQ test in this case is not valid. And three, while we submit that the case should be reversed and rendered, if this case is remanded, Social Security should be required to apply Listing 12.05 as it existed at the time Ms. Bardge's application was filed. First, we submit the ALJ is not qualified to decide whether an IQ test is valid because an ALJ must evaluate activities showing adaptation contrary to the IQ. The Court has been careful in past cases in laying out circumstances which can invalidate an IQ. In those cases, the claimant had said he could work or had significant work history. The claimant did not contend that their IQ was valid. The claimant had no more than a marginal education. Or the administrating psychologist did not say that the claimant's IQ was valid. Actually, they said it was invalid. These factors are not found in Ms. Bardge's case. The ALJ does not have the needed expertise to decide what factors are consistent with IQ scores. But whether it's correct or incorrect, didn't the ALJ purport to provide some reasons why he didn't find the IQ test to be accurate, for lack of a better term? That, for example, one of the doctors said that Ms. Bardge, although she wasn't malingering, that she didn't give full effort. And that given some of the other things that Ms. Bardge was able to do in her daily life, the ALJ didn't believe that the IQ tests were an accurate description of her intellectual ability. So the IQ test you're talking about is Dr. Schwartz. He's the only one who gives an IQ test. And he doesn't find, he knows about her work history. He knows about her activities of daily living. He knows about all those things that the judge mentions. And he still does not find that her IQ test is invalid. So he, as a medical doctor, has taken into consideration, we submit, the things that the judge then says are inconsistent with the IQ score. So your position is that it's a binary choice for the ALJ? The ALJ's choice is either to find the IQ test valid or invalid. That's the first thing he has to do. But he can't come up with, he can't make that medical decision on his own. We say that that... What's the medical decision you're talking about? The validity of an IQ score. But you just said that he can find it invalid. So you look at the evidence, and if there's medical evidence that shows validity, then he finds it valid. And if there's medical evidence that shows invalidity, then he finds it invalid. So he can make the decision about validity? Based off of medical evidence. That's the issue, is that there's no medical evidence. None of the doctors say that this IQ test is invalid. Not even Dr. Garner, who he relies upon. But it's not a question, is it always a question of validity? If you have an IQ test, for example, right at the borderline score of a certain category or impairment, the ALJ can't take anything else into account in determining what that IQ score means? I think that the doctor tells you what the IQ score is, and either the IQ score is valid or it's not. You can have a valid IQ score of 70, for example, which would be on the cusp of borderline intellectual functioning, and still meet 12.05c. And then the judge says, okay, the IQ test is valid, but these other things rebut it. So the new social security regulation... Assume that's the case. Let's assume that the judge made an error with regard to evaluating the IQ test. Then you go to the other factors, whether it's adaptive functioning. So if he did make a mistake, wouldn't that be a harmless mistake? If there was substantial evidence in the records to support his position that the alternative requirements had not been met? So we submit that there's not substantial evidence to support invalidating the IQ test. But that was a question of fact for the judge, wasn't it? It is. It's a question of fact, but I don't see how you could find that there is substantial evidence to support a test. When all Dr. Garner did, that's who he relied upon. Dr. Garner reviewed the records from Dr. Schwartz and just said, well, you're the one who did the testing. You're the one who interviewed her. You're the one who talked to her. But I think that your conclusion is wrong about your own testing. Well, set aside for a moment the testing. She also has to show that she doesn't have the functioning that would overcome the presumption that the testing, the lower testing score gives to her. And it seemed like all the doctors testified or agreed that she had these abilities to function, which took the presumption away that the IQ test made her mentally disabled. Dr. Schwartz did not find that. Dr. Schwartz found that she had an IQ score, that she was not malingering. And he seems in his report to be looking to try to figure out why the IQ test seems to be lower than he would expect. But he does not say that she is doing anything or that she's malingering or doing anything that would invalidate the IQ test. But I'm talking about the activities themselves. She self-reported a number of activities which the judge relied upon. And at least, I think, at least two of the doctors reported those same activities. So it's a question of evaluating those activities and determining whether or not that overcomes their presumption, assuming there's an error with the IQ test. So I don't, I don't... Are we to challenge the judge's findings of fact in that regard in evaluating those activities? I think, I think so. I think that it's hard to say that when you have a doctor, a psychologist, and who's the only psychological evaluator who does testing, and he has the same facts in front of him as to what he, what Ms. Barge does during the day, that he would say that the judge could say that those things invalidate the IQ test, whereas the doctor doesn't think so. The doctor thinks that it's valid and consistent. But I think Judge Hook is asking you something a little bit, a little slightly different, which is, assume, assume that the test is valid. You don't stop there, right? The ALJ doesn't stop there. If the ALJ had found the test valid, he's got to move on to other sequential steps, right? And so the question is, at those other sequential steps, where did the ALJ go wrong? In the substantial evidence evaluation. That's what we're submitting, that substantial evidence does not support his finding. We have five different doctors. We have Dr. Schwartz, who I've already talked about. And then we have Dr. Petzl, who reviews the file for DDS, and it's unclear what he finds. He makes some comment about invalidity, but it's unclear if he's saying that he thinks that it's valid, invalid, or if he thinks that Dr. Schwartz said that it was invalid. But the judge doesn't really discuss Dr. Petzl's opinion, so it's not something that I was going to bring in front of this Court. And then the Commissioner decides that Schwartz isn't enough, and then they start sending out questionnaires. They could have gone back to Dr. Schwartz and asked for more information. That's what would have made sense. But instead, they start to ---- Robertson, I guess my point is, there doesn't seem to be much dispute about her activities, what she could do. She self-reported a number. The doctors reported basically the same activities, and the judge determined that they didn't meet the requirements for the listing. And so are we to now re-evaluate those activities and disagree with them? Do we have that authority to disagree with them if there's a basis for his determination? If his determination, if you find that his determination is supported by substantial evidence, which we submit that it's not, then his finding would stand. But there wasn't much conflict as to what she could or couldn't do, was there? No, but this Court has had other cases, and in those cases, those activities of day living were not enough to invalidate an IQ score. These other people had these other things that I had talked about. They had a substantial work history, whereas Ms. Bard worked one year above substantial gainful activity in her life. And she hasn't said that she can't work. I mean, she hasn't said that she can work. She has not, none of her psychologists have said that the IQ test is invalid. So that's what, that's where the crux of this argument comes from, is that the Court has left this opening, and we think that Ms. Bard falls into that opening. So the new Social Security regulations agree that the validity cannot be, has to be determined by a qualified medical source and not the judge. And to determine that Ms. Bard demonstrated that— You dropped your voice. What was that? I'm sorry. Okay. To determine that Ms. Bard demonstrates adaptive functioning sufficient to set aside the IQ test, he would have to evaluate things like her activities of daily living, which we talked about, the fact that she was in special education, that she reads at a fourth grade level, she does math at a third grade level, and the one year of SGA that we talked about. Furthermore, through the use of the GRID rules, Social Security acknowledges that as you age, a normal person's ability to adapt to work changes. The ALJ does not have the expertise to determine what effect aging plays into this. It makes the case much more complex, and the decision has no expertise in that area. These are medical determinations we submit which fall outside of his expertise. So we've talked, we've done the substantial evidence. We talked about that. I've talked to you about the first two doctors, Dr. Schwartz and Dr. Petzl. But then we also have Social Security who decides that Dr. Schwartz isn't enough. They decide that they're going to send questionnaires to two more doctors and ask them to review the records. You're going to, you have to bring your opening session to a close. Oh, I'm sorry. Thank you for pointing that out, Your Honor. Thank you. Ms. Morelli. Good morning, Your Honors. May it please the Court. Amy Morelli on behalf of the Commissioner. Could you move that mic a little closer? There we go. Sorry, I'm a little short, so I'll have to lean over. We're asking the Court to affirm the Commissioner's decision. Finding that the claimant did not meet the listing for intellectual disability  I think that the Court's decision is a good one. The most important thing about this case goes to one of the points that Judge Huck's question highlighted. Basically, notwithstanding the validity or invalidity of the IQ scores, which the Commissioner does submit the ALJ properly decided, the claimant still failed to meet her burden to demonstrate the requisite deficits in adaptive functioning to meet either one of the listings for intellectual disability. As the Court's already pointed out, there really is not very much dispute about what the claimant was capable of. The record demonstrated that she could read and write. She was able to handle her deceased husband's life insurance matters. She handled bills. She monitored children, including her grandchildren. She managed a household independently. She passed independently the written portion of a driving exam. And she drove a church van several times a day, transporting elderly people to church and to the store and went grocery shopping for them. These are not the adaptive functioning activities of an individual who meets a listing for intellectual disability. There really isn't any dispute, is there, about her adaptive functioning? Well, and that's what our— It either comes from her own testimony and it's corroborated by the physician. Right, and to meet— I mean, she told them the same thing as she told the ALJ. Correct, Your Honor. And for that reason, she did not demonstrate the deficits in adaptive functioning, so she could not meet the listing, notwithstanding the validity or invalidity of the IQ score that Dr. Schwartz assessed. Turning to that, the question about whether a claimant meets a listing is an administrative determination, not a medical determination. And the ALJ acted within his authority in assessing whether or not the scores were valid. And to do that, he did not even make a medical determination in making that administrative determination, because he did rely on the medical record and the evidence from medical sources in determining that the IQ scores were invalid. So you're saying he made a medical determination? No, I'm saying that he made an administrative determination about whether she presented evidence that she met a listing, which to meet the listing, you have to present evidence of a valid IQ score within the relevant ranges. What does valid IQ score mean? Well, valid means accurate, that a test assesses what it purports to assess. And the record shows, Dr. Schwartz's consultative report in particular, and the narrative report that accompanied the IQ scores, shows that she felt—and I know that most people have been referring to Dr. Schwartz as a he, but I actually looked and it's a she—and Dr. Schwartz estimated that those scores were a low estimate of her abilities. Now, regardless of the basis for the low effort that she put into the scores or to her testing, which resulted in the low estimate that Dr. Schwartz assessed, nobody's saying that she lied or malingered or intentionally tried to deceive Dr. Schwartz, but Dr. Schwartz stated that the claimant put forth less than her full effort, perhaps because she lacked confidence in her abilities or because of what Dr. Schwartz assessed as an increase in fatigue. So regardless of the motivation behind the less than full effort, it still invalidated the scores because they were considered by Dr. Schwartz to be a low estimate of her cognitive functioning. What medical principle allows you to use low effort short of malingering to invalidate, not to diminish the weight of, but to invalidate a properly administered IQ test score? Well, I don't know that it—well, when you say properly administered— It was proper. There's no—the ALJ said nothing about the improper administration of the test. Right. There were no questions about that issue. That's correct, Your Honor, but there also—the low effort—I mean, this court has actually held that a low effort due to fatigue can actually be substantial evidence for an ALJ to determine that the scores are not valid so as to meet a listing, and that is the Smith v. Commissioner case that we referred to in our brief on page 22. In that case, there was an indication by the examiner that the claimant put forth limited effort due to fatigue and that the scores were an underestimate of her intelligence, and this court held that that constituted substantial evidence to support the ALJ's determination that the IQ scores were invalid. And so based on cases like that, the fact that it was low effort is actually exactly the kind of evidence that the court has found that the ALJ may rely on in determining that scores are not valid so as to meet the listing for intellectual disability. Ms. Morelli, is it all or nothing? Does it have to be valid or invalid, or is there something in between where the judge takes into consideration low effort and that was at the low end of—I'm trying to think how it was phrased—the low estimate of her actual IQ? Well— Take it into account, but still say it's generally valid, but still something that undermines her claim. The listings are unique in that they allow the agency to presume disability. It's presumptive disability. And so to meet those listings under the Seminole Supreme Court case of Zebley, you have to meet every element of the listing to be found disabled, because the idea is that that cuts off the inquiry. You know, the agency doesn't go beyond that to look at the whole person and whether or not he or she can perform substantial gainful activity. They're cutting it off. So the standard in that way is high, that it has to be met perfectly in order to be presumptively disabled under the listings. And so if you find that the claimant did not meet her burden—if an ALJ finds that the evidence of valid IQ scores, then she doesn't meet the listing. That being said, of course, the judge can still consider the IQ testing in assessing her cognitive abilities. And in fact, that's what the judge did in this case. Even though the IQ scores were not valid for purposes of meeting the listing for intellectual disability, he still, out of an abundance of caution and giving her the benefit of the doubt, assessed a severe impairment and then imposed mental RFC limitations, including simple routine and repetitive work, which all of the medical sources on which the ALJ relied indicated that she could perform. Your answer includes both 12.05B and 12.05C, or one or the other? Well, for both, she had to show evidence of the requisite deficits in adaptive functioning. So that's an element of both 12.05B and 12.05C. Right. But those two are not exactly the same in other respects. Right. So for the IQ scores, the valid IQ scores that the claimant would need to present evidence to meet, the B range is 59 and below. Two of her scores fell within that range. The full-scale IQ was 59 and the verbal IQ was 58. But as we discussed, the ALJ properly found those scores not to be valid. And Dr. Schwartz's testing did not yield any IQ scores that would actually fall within the 12.05C range. And not 70 and above. I just want to make one final point, and that's that the claimant has alleged that this case is different from other cases because in other cases where the claimant did not meet a listing for intellectual disability, there was evidence that the claimant in those cases could perform substantial gainful activity. I would just like to dispute the fact that there's no evidence that she can perform full-time work at SGA levels. She reported a work history of working part-time as a food server for three years. While this was part-time, it was still 30 hours a week. There's no indication that she quit that job because of any mental difficulties or limitations. It was because she described it as a program ending. She also worked full-time per her own self-report on a work history report in flower arrangement manufacturing, and that was for 11 years. While these predated the 15-year period that would allow them to constitute past relevant work, they still showed that the claimant did not have intellectual disability or difficulties and that she could perform substantial gainful activity. But don't you have to take all of that into account with her other physical limitations, too? Yes. And she has severe physical limitations, doesn't she? That's undisputed, too. Well, she does have severe physical impairments, and the ALJ assessed those, but still found that she could perform a reduced range of light work. And so while she wouldn't necessarily be able to return to the work that she had done previously because of her physical limitations, really the claimant has focused more on her mental impairments, and the Commissioner's position is that those mental impairments did not prevent her from performing work activity, even if her physical impairments may prevent her from performing, for instance, heavy work. I'll tell you, I mean, I know the standard of review is very deferential to the Commissioner, and that's the way it is, and that's what will apply. But this case, if you look at it from my perspective on a de novo basis, cries out for a different result. I mean, I have to disagree with you, Your Honor. These activities, these are the kinds of things that we see all the time in claimants who don't meet a listing for intellectual disability. The ALJ accommodated her mental limitations by limiting her to short, simple, routine tasks, and I think that the substantial evidence, which, as you say, is the standard to apply, certainly supports the ALJ's decision, but I also think that even if the standard were not so deferential, that the decision, the outcome in this case was correct. Unless the Court has any additional questions, I don't have anything further at this time. I think we understand your position. Thank you, Judge. Ms. Braden. Thank you. First, I would like to distinguish the Smith case. The Smith v. Commissioner that was on page 22 of the government's brief, there are a lot of other things that are going on. The claimant in that case did not even say that her, that she had mental impairments, and she attended school through the 12th grade, she earned a GED, and she had passed relevant work as a nursing assistant. She passed the nursing assistant test. That shows a lot more adaptive functioning than what Ms. Barge has at her 8th grade education with her special education from grades 4 to 7. Well, I think you're right that that case is distinguishable on its facts, but doesn't it stand for the proposition that you can take into account all sorts of other non-medical evidence to determine the validity of an IQ test? I think so, but the doctor who did the testing had all these other things in front of him, and it did not make him think that the IQ test was invalid. Just as Your Honor pointed out, just saying that there's a low estimate, there's nothing that says that when you have a low estimate that that means the test is invalid. So, and the other thing I wanted to mention is that Ms. Barge reports to Dr. Schwartz when she went that she was working 4 to 5 hours a week, not 30 hours a week. I think later, her memory may not have been as good by the time we got to the hearing, which was 9 years later, but she originally told Dr. Schwartz she was only working 4 to 5 hours a week, which, again, is a lot different than part-time work, and she said she was doing it so that she could get food stamps, and then as she got older, her condition got worse. She said she was no longer able to do her work as a flower shop attendant because of the carrying and lifting. So, as the age increases, we submit, you know, the judge does not have, the ALJ does not have the medical expertise to determine how those things, how age affects the medical condition. So, we submit that the judge acted outside of his authority. We believe that the case should be reversed and remanded because they're, sorry, reversed with a word of benefits because there is not substantial evidence to support the judge's decision, and we note that the Social Security Act is supposed to be a remedial statute that's liberally applied. It's non-adversarial. The Social Security Administration has seemed to look for every opportunity to ask another doctor to read Dr. Schwartz's opinion and say, well, what was Dr. Schwartz saying? Why don't you just ask Dr. Schwartz? Why do we, why are we trying to develop the record to get additional opinions to say whether or not Dr. Schwartz's opinion was valid when you can just ask him? We submit that, I mentioned at the beginning, that if the case is remanded, we submit the old regulations should apply. We think that Social Security cannot engage in retroactive rulemaking, which is what they've done by changing 12.05c, and they would have to have expressed grant of authority by Congress, and that's what the Supreme Court held in Bowen v. Georgetown University Hospital. The retroactive rule alters her existing rights, and it's impossible to go back to 2009 and show that she would meet the listings as they are now. So we developed the case under the rules that applied to her at the time, and we think that those rules should stand. That's all I have. Thank you. Thank you. Thank you. We'll go to the next case.